In the Matter of the Consolidated Arbitration between EDDIE STEAMSHIP COMPANY, LTD., as Owner of the M. V. "ROWENA", Petitioner-Respondent,

v.

CZARNIKOW–RIONDA COMPANY, INC., as Charterer, Respondent-Cross-Petitioner,

and

Colonial Sugars Company, Respondent-Cross-Petitioner.

No. 77 Civ. 5794.

United States District Court, S. D. New York.

Nov. 19, 1979.

McHugh, Heckman, Smith & Leonard, New York City, for respondent Czarnikow-Rionda Company, Inc.; Daniel J. O'Callaghan, James M. Kenny, New York City, of counsel.

Burns, Jackson, Miller, Summit & Jacoby, New York City, for respondent Colonial Sugars Company; John L. Amabile, New York City, of counsel.

Healy & Baillie, New York City, for petitioner; Jack A. Greenbaum, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Petitioner Eddie Steamship Company ("Eddie") brings this action under 9 U.S.C. § 9 for an order confirming an arbitration award issued July 8, 1979. Czarnikow-Rionda Company ("Rionda") and Colonial Sugars Company ("Colonial"), the other parties to the arbitration proceedings from

which this award results, oppose Eddie's petition and cross-petition for an order vacating the award and remanding the matter to the arbitrators.

The parties appeared before the Court on September 20, 1979. They agreed at that time to enter into a stipulation to correct two relatively minor errors in the award. These errors resulted from an apparent miscalculation and an omission by the arbitrators. The parties' stipulation was approved by the Court on September 28, 1979.[1] For the reasons set forth below, the arbitration award is confirmed as modified by the stipulation, and the motions to vacate the award made by Rionda and Colonial are denied.

The arbitration proceedings in issue here were initiated to resolve disputes growing out of two contracts: (1) a charter party entered into by Eddie, as the ship "owner,"[2] and Rionda, as charterer, and (2) a sales contract between Rionda, as buyer, and Colonial, as seller. Rionda chartered Eddie's vessel (the M.V. "Rowena") to transport bulk sugar from Australia to Louisiana. The Rowena sailed from Australia on February 25, 1973, and arrived at New Orleans on March 29, 1973. The vessel discharged its cargo from April 3 until April 6 at the New Orleans Public Bulk Terminal, and from April 9 through April 20, 1973, at Colonial's facility in Gramercy, Louisiana.

During maneuvers at the Colonial dock on April 9, the Rowena, in attempting to shift astern without the aid of tugs, drifted away from the dock and pulled loose a mooring dolphin. The dolphin was lost in the Mississippi River and never recovered. Colonial estimated the loss of its dolphin at $53,000 and proceeded to deduct this amount from its payment to Rionda under the sugar sales contract. Colonial also withheld an additional $47,442.27 for other expenses associated with the Rowena's discharge of cargo at the Colonial facility.

Rionda, in turn, withheld $142,485.95 from the amount due Eddie under the charter party. The $53,000 retained by Colonial under the sales contract was included in this amount. Also included were charges for a number of items for which Colonial had withheld payment to Rionda.

The Eddie-Rionda charter party provided for the arbitration of all disputes arising out of the charter agreement. The Rionda-Colonial sales contract, incorporated into the charter party by reference, required Colonial to become a party to any arbitration proceeding between Eddie and Rionda initiated pursuant to the arbitration clause of the charter party. On May 31, 1974, Colonial and Rionda agreed to have the claims of Eddie, Rionda and Colonial resolved in a consolidated arbitration proceeding. Eddie did not concur in this Colonial-Rionda agreement, but on July 28, 1975, Judge Brieant issued an order requiring a consolidated arbitration. *Czarnikow-Rionda Co. v. Eddie Steamship Co.,* 75 Civ. 1636 (S.D.N.Y. July 28, 1975). Satisfied that Eddie's position would not be prejudiced, Judge Brieant directed that the parties "proceed to a consolidated or joint arbitration proceeding at which all of the matters in dispute arising out of the aforesaid charter party and written sales contract shall be submitted." *Id.*

Colonial and Rionda claim the award should be vacated under section 10(d) of the Arbitration Act, 9 U.S.C. § 10(d), because the award is not "mutual, final, and definite." They contend that the arbitrators

1. The arbitrators miscalculated the interest due Rionda from Colonial. The parties' correction of this calculation resulted in the revision of the award to Rionda from $132,517.41 to $133,-002.44. In addition, the arbitrators failed to take account of $7815.98 Rionda paid Eddie in settlement of part of their dispute. The parties' adjustment for this payment, and the deduction of interest abated, caused the award to Eddie from Rionda to be reduced from $147,790.37 to $136,027.68.

2. The parties disagree whether Eddie was the true owner of the chartered vessel at the time the instant disputes arose or merely was the chartered owner of the vessel. The ownership status of Eddie with respect to the ship, however, has no bearing on the Court's decision here.

imperfectly executed their powers because the latter did not decide the question of Eddie's liability in tort (as owner or owner *pro hac vice* of the Rowena) for destruction of the mooring dolphin. Colonial and Rionda maintain that Judge Brieant's July 28, 1975 consolidation order required the arbitrators to resolve this issue. In addition, Rionda argues that the arbitrators' failure to obtain and to review the Rowena's logs in their consideration of Rionda's claim for dispatch deductions provides another basis for vacating the award under 9 U.S.C. § 10. The Court, however, cannot agree with Colonial and Rionda's contentions and finds no reason to vacate the award.

■ Colonial contends that the arbitrators failed to determine if Rionda could be liable to Colonial for the destruction of the dolphin by the Rowena. As part of its sales contract with Colonial, Rionda guaranteed "the performance of all of the obligations" of Eddie under the charter party. Colonial claims that the arbitrators did not consider the possible application of this guarantee to Eddie's liability to Colonial in tort. This contention is without merit. As required by Judge Brieant's order, the arbitration panel ruled on the liabilities of all three parties under the charter party and sales contract. The arbitrators expressly found "no provisions under either of the contracts . . . for a claim or withholding by any party against the other two in relation to the dock damage."[3]  Whether the arbitrators misinterpreted these agreements is not open to judicial review. *Bernhardt v. Polygraphic Company of America,* 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

The arbitrators only considered liability under the charter party and sales contract and did not decide whether, apart from these agreements, Eddie could be liable to Colonial in tort for destruction of the dolphin. Colonial urges that as a result the award is not final. This argument also is without merit. The arbitration panel determined that Colonial could not claim directly against Eddie for the dolphin destruction under the sales contract and charter party. The panel was not required to consider whether Eddie had any noncontractual liability to Colonial.

■ Judge Brieant's order only required that questions of liability under the charter party and sales contract be submitted to arbitration. Arbitration is a matter of contract, and parties cannot be required to submit to arbitration any dispute they have not agreed to submit. *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, I. B. T.,* 605 F.2d 1290, 1294 (2d Cir. 1979). Eddie never agreed to have the arbitrators decide the question of its liability to Colonial in tort. Consequently, Judge Brieant's order could not require the parties to submit this issue to arbitration.[4]

---

**3.** Arbitration Award, p. 9. The guarantee Rionda gave Colonial reasonably could have been construed by the arbitrators as a performance guarantee of Eddie's contractual obligations under the charter party as opposed to a promise by Rionda to indemnify Colonial for all losses Colonial might suffer for which Eddie could be liable.

**4.** Thus, the Court need not reach Colonial's argument that Eddie, as owner or owner *pro hac vice* of the Rowena, is liable in tort for destruction of the dolphin.

Assuming *arguendo* that the arbitrators believed the guarantee in Rionda's contract with Colonial extended to Eddie's liability in tort, the Court would still have no basis for vacating the award. The arbitrators determined that Eddie was not the owner of the vessel. It is not the Court's function to review this factual determination. An award can be vacated only under one of the grounds specified in 9 U.S.C. § 10. *Office of Supply, Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 379 (2d Cir. 1972). These grounds do not include mistakes of fact. *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S. A.,* 312 F.2d 299, 300 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963). The arbitration panel did not consider whether Eddie, although not the registered owner, could be liable in tort as owner of the Rowena *pro hac vice.* However, even if Eddie's tort liability had been in issue, the panel's failure to consider Eddie's possible liability as owner *pro hac vice* still would not be grounds for vacating the award. An award may not be vacated for errors of law by the arbitrators. *Office of Supply, Republic of Korea v. New York Navigation Co., supra,* 469 F.2d at 379. Though perhaps Eddie could be liable for the dolphin's destruction as owner *pro hac vice, see Atlantic Coast*

Rionda maintains that the arbitrators' failure to call for the Rowena's logs, which allegedly were in Eddie's possession, constitutes such an imperfect execution of their powers that an order vacating the award is required by 9 U.S.C. § 10.[5] The Court cannot agree. Though Rionda claims the logs were essential to a determination of the dispatch credits it was entitled to deduct from its payments to Eddie, the arbitrators apparently thought otherwise. The arbitrators accepted neither Eddie's nor Rionda's dispatch figures but prepared their own computations for the dispatch credits Rionda could deduct. The panel did not ask Eddie to produce the logs.

This is not an instance where arbitrators were presented with material evidence and refused to consider it. An award issued in such an instance might well be vacated under 9 U.S.C. § 10. The situation could be different here if the ship's logs were important to the arbitrators' determination and if, after requested by Rionda to do so, the arbitrators refused to order Eddie to produce the logs. *See Hyman v. Pottberg's Executors,* 101 F.2d 262, 265 (2d Cir. 1939).[6] Nothing in the record before this Court, however, indicates either Rionda or Colonial requested that the arbitration panel require Eddie to produce the logs.

The court in *Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S. A.,* 300 F.Supp. 179, 181 (S.D.N.Y.1969), recognized that "perhaps the most important items of documentary evidence in any maritime controversy are the ship's logs." In *Chevron Transport* the vessel owner produced portions of the logs at the arbitration hearings but did not allow its adversary, the charterer, to have access to the logs.[7] Yet even there the court refused to vacate the award absent a clear showing of prejudice. Rionda has not demonstrated that it was prejudiced by its inability to inspect the Rowena's logs. In computing their own dispatch figures the arbitrators relied on neither Rionda's nor Eddie's submission and gave no indication they believed the logs were important.

The Court finds no basis for vacating the arbitration award. Accordingly, petitioner's motion for confirmation is granted. This case is to be removed from the suspense docket and the award confirmed as modified by the parties' stipulation. The motions of Colonial and Rionda are denied.

Settle order on notice.

---

*Line R. Co. v. Agwilines, Inc.,* 195 F.2d 459, 462 (5th Cir. 1952), the arbitrators' neglecting to consider this basis of liability would not constitute the "manifest disregard" of law acknowledged as providing a basis for vacating an arbitration award. *Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir. 1978). There is nothing in the record here to suggest the arbitrators were aware of law that might make Eddie liable to Colonial as owner *pro hac vice* and proceeded consciously to disregard it. *San Martine Compania de Navigacion, S. A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir. 1961).

5. Section 10(d) of the Arbitration Act, 9 U.S.C. § 10(d), permits a federal court to vacate an award where the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." Section 10(c), 9

U.S.C. § 10(c), provides for vacatur where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy."

6. Even in *Hyman v. Pottberg's Executors, supra,* where the court determined the arbitrators should have called for the production of important documents upon demand by one of the parties, the court noted that "[i]t is at best very doubtful whether the failure to require the production of this evidence could be regarded as a refusal 'to hear evidence pertinent and material' within § 10(c)." 101 F.2d at 265.

7. Here Eddie claims it gave respondents an opportunity to inspect the logs. Rionda, however, maintains that it never received Eddie's letter advising it that the logs were available.